UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DEXTER G. GOEI and VERONICA )
DE PIANTE VICIN, )
    Plaintiff, )
)
v. ) C.A. No. 18-263-JJM-PAS
)
CBIZ, INC.; CBIZ MHM, LLC; and )
GRAFTON H. WILLEY IV, )
    Defendant. )

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff's Motion for Partial Summary Judgment concerning three of the Defendants' affirmative defenses, requires the Court to decide whether accountants sued for malpractice by one of their clients can attribute the alleged legal malpractice of the client's lawyers to the client such that it reduces the damages that the accountant must pay. Rhode Island law dictates that they may do so only when the attorney conduct at issue relates to managing a client's case but makes no such opportunity available to defendants for attorneys acting in advisory roles. The affirmative defenses at issue allege comparative negligence both for attorney conduct related to representation during a legal proceeding and for an alleged failure to properly advise their clients and Defendants. Summary judgment is thus proper for the portion of these defenses related to the alleged negligence that occurred as part of the attorneys' advisory role under Rhode Island law for imputed negligence.

Summary judgment is also proper for the portion of the affirmative defenses related to the attorneys' alleged negligence during their representation of Mr. Goei and Ms. De Piante Vicin because the attorneys' actions clearly met the low standard for defeating a failure to mitigate defense under Rhode Island law.

I.   BACKGROUND[1]

Plaintiffs Dexter G. Goei ("Mr. Goei") and Veronica de Piante Vicin (together, the "Plaintiffs") had retained the accounting services of Defendants CBIZ, Inc., CBIZ MHM LLC, and Grafton H. Willey IV ("Mr. Willey") (collectively "CBIZ") to prepare their U.S. tax returns. ECF No. 63 at ¶ 99. Plaintiffs contend that CBIZ failed to properly advise them in connection with the filing of their 2014 personal income tax return, which resulted in the Internal Revenue Service ("IRS") assessing a "Failure to File Penalty." ECF No. 47 at 1. Mr. Willey did not inform Plaintiffs of the potential for penalties or of options available that would have avoided or reduced penalties and interest. ECF No. 48 at 6-8.

*CBIZ and Willey*

Beginning in 2007, Plaintiffs hired Mr. Willey (who later joined CBIZ in 2008) to be their personal income tax accountant in the United States. Mr. Goei is the Chief Executive Officer of a multinational telecommunication company, Altice USA. While living in Switzerland in 2010, Mr. Goei formed an entity in Luxembourg to hold his

---

[1] The Court presents these facts in the light most favorable to the Defendants, the nonmoving party. *See Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991).

various partnership, equity, and investment interests. In 2014 Altice tendered an initial public offering, and as a result Mr. Goei earned a substantial income.

Mr. Willey provided guidance and services to Mr. Goei in connection with the preparation and filing of Plaintiffs' U.S. tax returns, payments, and obligations. Mr. Willey would, among other things, prepare Plaintiffs' tax returns, arrange for extensions of filing deadlines, prepare foreign income reports, and provide strategies for amounts and timing of estimated payments and for avoiding penalties.

Because Mr. Goei was a U.S. citizen living abroad, Plaintiffs had an automatic extension from April 15, 2015 to June 15, 2015 to file their 2014 U.S. tax return. Mr. Willey arranged for an additional six-month extension for Plaintiffs to file their 2014 tax returns by October 15, 2015.

As the October 15, 2015 filing deadline was approaching, Mr. Willey had not completed Plaintiffs' 2014 tax returns. Mr. Willey told Mr. Goei that he was "struggling with" the "presentation" of Mr. Goei's foreign entities on the tax returns.

On October 9, 2015, Mr. Goei emailed Mr. Willey information that allowed him to figure out Plaintiffs' 2014 taxable income and gross U.S. tax. Mr. Willey still did not complete Plaintiffs' 2014 tax returns.

Plaintiffs' Swiss tax returns were not complete as of the U.S. deadline of October 15, 2015, and Mr. Willey informed Mr. Goei that as of late October Plaintiffs would owe six or seven hundred thousand dollars in penalties. The Swiss returns were not completed until mid-December and not provided to Mr. Willey until after December 15. At that point, because more than two months had passed since

Plaintiffs' U.S. filing deadline, Plaintiffs had incurred three months' worth of penalties.

Plaintiffs were entirely unaware that the IRS would assess them millions of dollars in penalties and interest as the October 15th deadline passed without a filing. Mr. Willey did not tell Plaintiffs that the IRS would assess them Failure to File Penalties in addition to penalties for failure to make timely tax payments. He also failed to advise them of their right to seek a further filing extension until December 15, 2015, of the ability to file a tax return using estimates of data, or other actions that could have avoided or reduced penalties and interest. Having failed to file a return by October 15th, or to request a further extension to December 15th, Plaintiffs' fate was sealed; the IRS would assess them a monthly Failure to File Penalty that would continue to run until the return was filed.

On December 17, 2015, Plaintiffs received their finalized Swiss tax return and sent it to Mr. Willey. Mr. Willey did not begin working on the return until the end of January 2016, and did not provide it to Plaintiffs until February 9, 2016, nearly two months after receiving Plaintiffs' Swiss tax return.

On April 25, 2016, the IRS issued a deficiency notice related to the 2014 tax year ("Deficiency Notice"), assessing penalties and interest, including the Failure to File and Pay Penalty ("2014 Assessment").

After the IRS issued the Deficiency Notice, Mr. Goei engaged Mayer Brown to pursue an appeal before the IRS Office of Appeals. Mayer Brown initially submitted a letter to the IRS arguing that Plaintiffs were entitled to a full abatement of

4

penalties because Plaintiffs' complicated international tax situation meant that there were "unique, unforeseen complexities in determining [Plaintiffs'] 2014 tax year U.S. tax liabilities" and that as a result, "to avoid filing an inaccurate return, filing was unavoidably delayed." Mayer Brown then argued that Plaintiffs were entitled to a full abatement of penalties because they had relied on incorrect advice from Mr. Willey and CBIZ. Mayer Brown alternatively argued that Plaintiffs were entitled to an abatement of all but one month's worth of penalties because they had paid their tax liability in full on November 2, 2015. ECF No. 63 at ¶ 137. IRS Publication 54 allows taxpayers abroad to request an additional two-month extension of their filing date. If Plaintiffs had requested this extension, they would not have begun to incur penalties until December 15, 2015, instead of October 15, 2015. During the IRS appeal, the IRS asked whether Mayer Brown intended to seek this extension retroactively. Mayer Brown, however, conceded to the IRS that the extension had not been sought in a timely manner, and chose not to make a written request for what would effectively be a retroactive extension.

After the presentation, the IRS agreed to reduce the penalty. *Id.* at ¶ 54.

*Mayer Brown Involvement*

The law firm of Mayer Brown served as Plaintiffs' global tax advisor, with attorney Jason Bazar as the lead advisor. ECF No. 63 at ¶ 112.

By 2013, in anticipation of the Altice initial public offering, Altice engaged Mayer Brown "to provide tax advice to Altice for the benefit of employees who had U.S. tax filing obligation[s]." Mr. Goei and Mayer Brown agree that Mayer Brown

5

was not retained to prepare Plaintiffs' tax returns, advise them in connection with their general filing obligations, or supervise Mr. Willey in any regard. As Mr. Goei explained, no one at Mayer Brown ever represented Plaintiffs in connection with their personal income taxes (other than in connection with the appeal discussed below), and he never requested or expected anyone from Mayer Brown to advise Plaintiffs on the consequences of failing to file a timely tax return.

In April 2013, Mr. Goei introduced Mr. Bazar and Mayer Brown to Mr. Willey. Mr. Wiley claims that Mr. Goei introduced Mr. Bazar as being responsible for "trying to sort out my very complicated personal/corporate tax issues." Mr. Goei asked Mr. Bazar and Mr. Willey to make sure that his tax strategy was coordinated. Mr. Bazar also advised Plaintiffs as to specific deductions and/or credits Plaintiffs should seek on their 2013 U.S. income tax return.

In preparing Mr. Goei's 2013 and 2014 returns, Mr. Willey found it necessary to reach out to Mr. Bazar "to make sure we are on the same page." And, at some point during or prior to April 2016, "tax lawyers at Mayer Brown" gave Mr. Goei advice about the tax consequences of employing individuals directly rather than employing them through a pass-through entity.

II.  STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should

6

be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

### III.  DISCUSSION

In their Complaint, Plaintiffs assert one count for negligence/malpractice against all Defendants based on Mr. Willey's failure to advise them of their filing options and the consequences of failing to timely file and pay their 2014 taxes. Plaintiffs filed a Motion for Partial Summary Judgment on the portions of three of CBIZ's affirmative defenses that involve imputing the alleged negligence/malpractice of Mayer Brown in failing to advise and/or supervise Plaintiffs and Mr. Willey on these matters.[2] CBIZ objected (ECF No. 61) and the Goei's replied. ECF No. 65.

---

[2] Plaintiffs filed a Motion for Partial Summary Judgment (ECF No. 47) in redacted form and filed an unredacted version under seal. ECF No. 52.

### A. Choice-of-Law Analysis

This Court must first determine whether Rhode Island law or New York law governs the question of whether the Defendants may use "imputed comparative negligence" to reduce Plaintiffs' recovery from CBIZ and Mr. Willey. Being a diversity case, the Court uses Rhode Island's choice-of-law principles. *Ellington v. Davol, Inc.*, No. C.A. 007-470-ML, 2012 WL 2021908, at *1 (D.R.I. June 5, 2012). Rhode Island applies an "interest-weighting" test when the court must determine which state "bears the most significant relationship to the event and the parties." *Taylor v. Mass. Flora Realty Inc.*, 840 A.2d 1126, 1128 (R.I. 2004) (quoting *Najarian v. National Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001)). The general factors for the Court to consider in deciding which state has the most significant interest in the relevant issue are: (a) predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task; (d) advancement of the forum's governmental interests; and (e) application of the better rule of law. *Woodward v. Stewart*, 104 R.I. 290, 300 (R.I. 1968). Additionally, the Rhode Island Supreme Court has set forth these standards to be considered for choice-of-law analyses in tort cases: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Harodite Indus., Inc. v. Warren Elec. Corp.*, 24 A.3d 514, 534 (R.I. 2011) (citation, internal quotation marks omitted). The Rhode Island

Supreme Court noted that "the most important factor is the location where the injury occurred." *Taylor*, 840 A.2d at 1128.

Moreover, Rhode Island adheres to the choice-of-law rules set out in the Restatement (Second) Conflicts of Law ("Restatement"). S*ee Aetna Cas. & Sur. Co v. Protective Nat'l Ins. Co. of Omaha*, 93-CIV-023B, 1993 WL 489637, at *6 n.18 (D.R.I. July 27, 1993). This includes the concept of "dépeçage", under which "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." *Id.*, cmt. on section (1)(d).

### 1. The Facts Relevant to the Choice-of-Law Analysis

A preliminary question presented by this motion is whether this Court may apply one state's law to a claim against a defendant and another state's law to an affirmative defense to the same claim. Other courts adopting Restatement § 145 have concluded that it is proper to do so. *See, e.g., Chi v. Loyola University Medical Ctr.*, 787 F. Supp. 2d 797, 801-03 (N.D. Ill. 2011).

However, the facts relevant to this choice-of-law analysis are those related to Mr. Willey's alleged negligent conduct, not Mayer Brown's alleged contributory negligence. Plaintiffs object to the idea that a non-party attorney's negligence may be imputed to a plaintiff to reduce or bar their recovery. ECF No. 47 at 2. This is the specific "issue" that must be separated out and given its own analysis for the purpose of this choice-of-law analysis. This issue relates to whether the law of comparative negligence in the accounting malpractice claim allows for a reduction to the

malpractice of the plaintiffs' attorney. Therefore, the Court should analyze this particular issue using the facts of the underlying accounting malpractice claim–not the potential legal malpractice claim.

### 2. *Application of the General Interest-Weighing Test*

The first interest this Court must consider, predictability of results, involves the parties' reasonable expectation as to which state's law would govern their liability for the issue at hand when the alleged malpractice occurred. *See Turcotte v. Ford Motor Co.*, 494 F.2d 173, 178 n.6 (1st Cir. 1974). Because Mr. Willey practices in Rhode Island, he would have reasonably expected that Rhode Island law would govern any liability arising from his practice.

The interest of maintaining interstate and international order pertains to "whether another state's law and policy would be 'offended' by application of Rhode Island law." *Id.* at 178. There is no discernable reason why New York would have a special interest in having its imputed negligence doctrine apply to a case involving an allegation of accounting malpractice where the tortious conduct allegedly took place in Rhode Island and where the perpetrator is a Rhode Island resident.

The interest of simplifying the judicial task also favors Rhode Island law. It goes without saying that it is easier for this Court is to apply Rhode Island law than New York law. *See Id.* at 178 n.6 (noting that it is simpler for a court to apply the law of its own state).

Furthermore, Rhode Island's governmental interest would be best advanced by application of Rhode Island law in this case. Rhode Island's public policy is to allow

10

innocent plaintiffs to recover fully from their tortfeasor. *See Roberts-Robertson v. Lombardi*, 598 A.2d 1380, 1381 (R.I. 1991). Accordingly, it is in the state's best interest for this policy to govern an alleged malpractice that a Rhode Island professional in Rhode Island perpetrated.

Rhode Island also has the better rule of law. Precluding the use of imputed negligence from reducing or barring a plaintiff's recovery ensures that they may recover the full amount they believe they are due in a single action. Defendants are free to implead a third party if they feel that they are liable for all or part of the negligence alleged against the Defendants.

### 3.   *Application of the Tort-Specific Interest-Weighing Factors*

The injury and the conduct causing the injury occurred in Rhode Island. The relationship between the parties is centered in Rhode Island. Plaintiffs entered a contract with Mr. Willey, a certified accountant practicing in Rhode Island, for the filing of their 2014 tax returns. The place of the wrong is "considered to be the place where the last event necessary to make the actor liable occurred." *Dodson v. Ford Motor Co.*, No. C.A. PC 96-1331, 2006 WL 2642199, at *3 n.5 (R.I. Super. Sept. 5, 2006) (quoting *Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 741 (S.D.N.Y.1996)). Here, Rhode Island was where the last event necessary to make the actor liable occurred. At the time, the Goei's were still living overseas, and Mr. Willey was practicing in Rhode Island. As the only parties are Plaintiffs and Defendants, the center of this relationship is Rhode Island. Therefore, Rhode Island is the place of the wrong.

Given that all the factors weigh in its favor, Rhode Island law applies to the imputed negligence issue presented by Plaintiffs' motion.

### B. Defendants' Affirmative Defenses

Having established that Rhode Island law applies to this motion, this Court must now determine whether summary judgment is appropriate for the portions of CBIZ and Mr. Willey's affirmative defenses related to imputed negligence.

1. *Whether Rhode Island Law Allows for Imputation of an Attorney's Comparative Negligence to Reduce or Bar a Plaintiff's Recovery*

Rhode Island state courts allow the negligence of a third party to be imputed to plaintiffs to reduce or bar their recovery in certain situations but have established that doing so is not always acceptable. The Court must evaluate the issue here against the backdrop of Rhode Island's public policies prohibiting juries from considering the negligence of non-parties, *see Roberts-Robertson v. Lombardi*, 598 A.2d 1380, 1381 (R.I. 1991), and allowing plaintiffs to recover fully for their negligence claims. *See L.A. Ray Realty v. Town Council of Town of Cumberland*, 698 A.2d 202, 213-14 (R.I. 1997). This Court will not create a new avenue to circumvent these rules absent clear evidence that Rhode Island state courts have established a basis for doing so. Accordingly, this Court must determine whether Mayer Brown's alleged negligence comports with any of the situations in which such imputation has been allowed.

Rhode Island state courts have refused to allow for imputation of a third party's negligence to reduce or bar a plaintiff's recovery in at least two situations. First, Rhode Island law prohibits imputing the contributory negligence of a driver to a

12

passenger injured in a car accident when the passenger has no control over, or principal-agent relationship with the driver. *See, e.g., Hermann v. R.I. Co.*, 90 A. 813, 814 (R.I. 1914). Second, the Rhode Island Supreme Court has declined to allow the negligence of third parties to be imputed to plaintiffs in personal injury cases in which the plaintiffs themselves were not negligent. *See Dixon v. Royal Cab, Inc.*, 396 A.2d 930, 936 (R.I. 1979) (citing *Gallo v. Simpson Spring Co.*, 181 A. 915, 918 (R.I. 1935)).

Two situations in which the Rhode Island Supreme Court has adopted the imputed negligence rule are when the third party is in a "joint enterprise" with the plaintiff and when the third party is the plaintiff's "agent."

"In the law of negligence, the term 'common' or 'joint' enterprise means an association of two or more persons in the pursuit of a common purpose under such circumstances that *each has the authority, express or implied, to act for all* in respect to the control of the means of agencies employed to execute such common purpose." *Farrar v. Edgewood Yacht Club*, 302 A.2d 782, 784 (R.I. 1973) (emphasis added). A New Jersey Supreme Court case cited with approval by the Rhode Island Supreme Court in *Najjar v. Horovitz*, 172 A. 255, 256 (1934) further clarifies that "[t]o constitute a common or joint enterprise within the rules as to imputed negligence, there should be . . . an equal right to direct and govern the movements and conduct of each other in respect thereto." *McGinley v. Winters*, 166 A. 166, 167 (N.J. 1933). While Plaintiffs may have had the ability to "direct and govern" the actions of their legal counsel, there is no indication in the record that this authority went both ways.

13

Accordingly, the record does not establish that the parties were a part of a "joint enterprise."

Rhode Island law also recognizes that the negligence of a plaintiff's agent may be imputed to the plaintiff to reduce or bar their recovery. *See, e.g., Fisher v. Andrews & Pierce*, 72 A.2d 172, 173 (R.I. 1950) ("[I]f defendant can show that the operator was acting as the agent or servant of the plaintiff at the time of the accident . . . then the doctrine *of respondeat superior* would operate and impute the negligence of the operator to the plaintiff."). CBIZ points to *King v. Brown*, 235 A.2d 874 (R.I. 1967) in support of its position that an attorney is an agent of their clients. However, that case only established that this relationship exists for work related to legal proceedings. The Rhode Island Supreme Court cited the Restatement (Second) of Agency § 253 as a basis for the "fundamental of agency law which imputes the neglect of an attorney in professional matters to his client and considers the omissions of the attorney as though they were the neglect of the client himself." 235 A.2d at 875. The relevant section of the Restatement reads: "A principal who authorizes a servant or other agent to institute or conduct such *legal proceedings* as in his judgment are lawful and desirable for the protection of the principal's interests is subject to liability to a person against whom proceedings reasonably adapted to accomplish the principal's purposes are tortiously brought by the agent." Restatement (Second) of Agency § 253 (Am. Law Inst. 1958) (emphasis added).[3]

---

[3] *King* itself involved an attorney's failure to "comply with [a court's] procedural requirements." 235 A.2d at 875.

14

CBIZ contends that Mayer Brown was negligent in failing to advise or supervise Plaintiffs and Mr. Willey and in failing to raise certain arguments during their representation of Mr. Goei during the IRS appeal. Rhode Island law does not establish that the negligence of an attorney is imputed to their client for acts or omissions related to an advisory role. Accordingly, any failure to advise or supervise Mr. Willey is not imputable to Plaintiffs. However, the alleged negligence of Mayer Brown during their representation of Plaintiffs as part of the IRS appeal would be imputable given that it happened during a legal proceeding. The question then becomes whether there are other grounds upon which summary judgment should be granted for this part of CBIZ's affirmative defenses.

> 2. *Whether a Genuine Dispute of Material Fact Exists Regarding Mayer Brown's Alleged Failure to Mitigate During the IRS Appeal*

Even though Rhode Island law would generally allow for the alleged negligence of Mayer Brown attendant to its representation of Mr. Goei to be imputed to him, summary judgment on this portion of CBIZ's affirmative defenses is still appropriate as Rhode Island law acknowledges that plaintiffs have a relatively low burden for defeating failure to mitigate defenses.

"With respect to mitigation, the plaintiff need only make reasonable efforts to mitigate damages; the burden is not 'onerous and does not require him to be successful in mitigation.'" *Shoucair v. Brown University*, No. Civ.A.-PC-96-2896, 2004 WL 2075159 at \*12 (R.I. Super. Sept. 9, 2004); *see also Tomaino v. Concord Oil of Newport*, 709 A.2d 1016, 1026 (R.I. 1998).

15

Defendants contend that Mayer Brown's decision to not pursue a retroactive extension for the late filing of Mr. Goei's tax returns constitutes a "failure to mitigate" any damages incurred because of Mr. Willey's conduct. However, the fact that a plaintiff does not need to be successful in mitigating damages suggests that we need not parse the strategy or decision-making of Mayer Brown in its failure to ask the IRS for a retroactive extension for Plaintiffs and its subsequent decision to not pursue this argument after being apprised of its availability to them. Mayer Brown did enough during the appeal to obtain a reduction in the penalty for Plaintiffs. ECF No. 48 at ¶ 54. This is sufficient on its own to meet the low bar set for overcoming a "failure to mitigate" defense in Rhode Island. As such, there is no genuine dispute of material fact regarding this portion of CBIZ's affirmative defenses.

IV.   CONCLUSION

For these reasons, both prongs of CBIZ and Mr. Willey's affirmative defenses related to imputed negligence fail as a matter of law. Accordingly, the Court GRANTS Mr. Goei and Ms. De Piante Vicin's Motion for Partial Summary Judgment as to the portions of CBIZ and Mr. Willey's affirmative defenses related to imputed negligence. ECF Nos. 47 and 52.

IT IS SO ORDERED.

_/s/ John J. McConnell, Jr._
John J. McConnell, Jr.
Chief Judge
United States District Court

September 29, 2020